| | |
|---|---|
| **LEE & PERLES, L.L.P, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11774** |
| **RESOLUTE MANAGEMENT, et al.** | **SECTION: "G"(1)** |

## ORDER AND REASONS

Before the Court is Plaintiffs Lee & Perles, L.L.P. formerly known as Lee, Futrell & Perles, L.L.P., Gary A. Lee, and Richard M. Perles' (collectively, "Plaintiffs") Motion to Remand.[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion to the extent it requests that this matter be remanded to the Civil District Court for the Parish of Orleans, and deny the motion to the extent it requests attorneys' fees and costs.

## I. Background

### A.    *Factual Background*

This case arises out of Plaintiffs former representation of Avondale Shipyards, Inc. and its successors ("Avondale") in asbestos litigation (the "Avondale Asbestos Litigation").[2] On June 21, 2019, Plaintiffs filed a Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana.[3] Plaintiffs named as defendants Resolute Management, Inc. ("Resolute"), OneBeacon America Insurance Company ("OneBeacon"), Lamorak Insurance Company as

---

[1] Rec. Doc. 20.

[2] Rec. Docs. 1-3.

[3] *Id.*

successor to OneBeacon and Commercial Union Insurance Company ("Lamorak"), Samuel M. Rosamond, III ("Rosamond"), and Taylor, Wellons, Politz & Duhe, PLC ("Taylor Wellons").[4]

Plaintiffs allege that Lamorak, Avondale's insurer, and Resolute, the claims administrator for the Avondale Asbestos Litigation, owe Plaintiffs approximately $2,527,044 in unpaid legal fees Plaintiffs incurred over many years while Plaintiffs defended Avondale in the Avondale Asbestos Litigation.[5]

According to Plaintiffs, due to the large volume of malignancy cases filed against Avondale, Lamorak, Resolute, and Avondale determined that the law firm Irwin, Fritchie, Urquhart & Moore, LLC ("Irwin Fritchie") would join the defense group.[6] Plaintiffs allege that in December 2017 Plaintiff Gary Lee met with Rosamond, counsel for Lamorak, and Brian Bossier, counsel for Avondale.[7] According to Plaintiffs, during the meeting Lee was advised that to continue the long-term representation of Avondale Plaintiffs would have to join the Irwin Fritchie law firm.[8]

Plaintiffs allege that for most of 2018 they diligently and routinely met with Irwin Fritchie to familiarize Irwin Fritchie with the complex litigation.[9] From January 2018 through June 2018, Plaintiffs state that they transferred many key staff members and lawyers to Irwin Fritchie.[10] Additionally, Plaintiffs negotiated an early termination of their leased office space, ultimately

---

[4] *Id.* at 2–3.

[5] *Id.* at 3–4.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 5.

paying $300,000 in a negotiated buy out of the lease, so that Plaintiffs could join Irwin Fritchie.[11] Furthermore, Plaintiffs allege that they sent Irwin Fritchie "all Avondale-related data and intellectual property."[12]

Plaintiffs allege that on June 21, 2018, Rosamond informed them that "Resolute had decided that neither Lee nor Futrell nor Perles would be allowed to work on any Avondale defense file going forward."[13] Plaintiffs state that "[b]y the time Resolute announced their true intent, [Plaintiffs] had dismantled" their firm.[14] Plaintiffs allege that Rosamond was aware of Resolute's true intentions and "knowingly facilitated the misrepresentation and interference with contract."[15] Plaintiffs contend that they relied on the false representations of Lamorak and Rosamond, to their detriment.[16] Additionally, Plaintiffs assert that Louisiana Defendants "cannot hide behind their representation of Resolute as a defense to their bad actions, because no client can force a law firm to do wrong."[17]

Plaintiffs further allege that because of the directives of Resolute, Lamorak, and Rosamond, they entered a contract with Irwin Fritchie whereby Plaintiffs would receive $1,100,000 for their first year of work.[18] "By instructing Lee and Perles to make an employment/merger agreement with [Irwin Fritchie] and, without warning, after such agreement was confected, instructing [Irwin Fritchie], Lee and Perles that Lee and Perles were not to work

---

[11] *Id.*

[12] *Id.* at 6.

[13] *Id.*

[14] *Id.* at 7.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 8.

on any further Avondale cases," Defendants intentionally and tortuously interfered with the contract between Plaintiffs and Irwin Fritchie.[19]

**B.     *Procedural Background***

On June 21, 2019, Plaintiffs filed the Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana.[20] In the Petition, Plaintiffs specifically identified the following causes of action: (1) open account claims against Resolute, Lamorak, and OneBeacon; (2) detrimental reliance claims against all of the defendants; and (3) intentional interference with contract claims against all of the defendants.[21]

On July 19, 2019, Defendants Resolute and Lamorak, on behalf of itself and as successor to OneBeacon and Commercial Union Insurance Company (collectively, "Removing Defendants"), removed the action to this Court, alleging complete diversity of citizenship and an amount in controversy exceeding $75,000.[22] In the Notice of Removal, Removing Defendants plead the citizenship of the parties as follows: (1) Plaintiffs are citizens of Louisiana; (2) Resolute is a corporation organized under the laws of the State of Nebraska, with its principal place of business in Massachusetts (3) Lamorak is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania; (4) One Beacon American Insurance Company is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Minnesota; and (5) Rosamond and Taylor Wellons are citizens of Louisiana (collectively, "Louisiana Defendants").[23]

---

[19] *Id.* at 8–9.

[20] Rec. Doc. 1-3.

[21] *Id.*

[22] Rec. Doc. 1. Removing Defendants further allege that OneBeacon is a predecessor of Lamorak and no longer exists as a separate legal entity. *Id.* at 1, n.1.

[23] *Id.* at 4–6.

Removing Defendants acknowledge that Louisiana Defendants are non-diverse defendants, but Removing Defendants assert that their citizenship should be disregarded for the purpose of establishing diversity jurisdiction because Louisiana Defendants are improperly joined as defendants in this matter.[24] Specifically, Defendants argue that Plaintiffs fail to state a claim against Louisiana Defendants because neither owed Plaintiffs a duty for actions taken in connection with their legal representation of Lamorak.[25] Additionally, Removing Defendants assert that Plaintiffs failed to allege any facts that prove the elements of their purported detrimental reliance and intentional interference with contract claims.[26]

On August 26, 2019, Plaintiffs filed an Amended Petition.[27] In the Amended Petition, Plaintiffs specifically identified the following causes of action: (1) open account claims against Resolute, Lamorak, and OneBeacon; (2) detrimental reliance claims against all of the defendants; (3) fraud and conspiracy claims against all of the defendants; and (4) intentional interference with contract claims against all of the defendants.[28]

On August 16, 2019, Plaintiffs filed the instant motion to remand.[29] On September 3, 2019, Removing Defendants filed an opposition to the motion.[30] On September 9, 2019, Louisiana Defendants filed an opposition to the motion, which adopts the arguments set forth in Removing Defendants' opposition.[31] On September 11, 2019, with leave of Court, Plaintiffs filed a reply brief

---

[24] *Id.* at 4.

[25] *Id.*

[26] *Id.*

[27] Rec. Doc. 29.

[28] *Id.*

[29] Rec. Doc. 20.

[30] Rec. Doc. 44.

[31] Rec. Doc. 54. Louisiana Defendants' opposition was filed after the deadline set forth in Local Rule 7.5.

in further support of the motion.[32]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of the Motion to Remand*

In the motion, Plaintiffs assert that the Court should remand this case to state court because Removing Defendants cannot prove that Louisiana Defendants were improperly joined.[33] Plaintiffs contend that they have asserted several valid claims against Louisiana Defendants including detrimental reliance, fraud, and tortious interference with business relations.[34]

First, Plaintiffs claim that they have alleged a valid cause of action against Louisiana Defendants for detrimental reliance.[35] Plaintiffs note that Removing Defendants suggest that Plaintiffs were unreasonable in relying on any representation made by Rosamond because Rosamond was the attorney for another party.[36] Plaintiffs argue that there is nothing to suggest that Rosamond's actions were taken in his role as an attorney for Resolute or Lamorak.[37] Additionally, Plaintiffs assert that Rosamond was not acting as counsel for an opposing party because Plaintiffs and Rosamond often both represented Lamorak and Resolute.[38] Plaintiffs contend that "Rosamond's fraudulent behavior was instructing Plaintiffs to integrate into Irwin Fritchie and all that entailed which was fraudulently represented as the only way for them to continue defending the Avondale Litigation."[39] Because Plaintiffs and Rosamond worked together as co-counsel

---

[32] Rec. Doc. 58.

[33] Rec. Doc. 20 at 2.

[34] *Id.*

[35] Rec. Doc. 20-1 at 18.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 19.

[39] *Id.*

representing the interests of Lamorak and Resolute, Plaintiffs assert that Rosamond, at a minimum, owed them a duty of truthfulness and fair dealing.[40] Plaintiffs contend that this case is similar to *In re Fee Agreement Between Huey & Fong Trust and Kenneth Huey Family Trust and Sher, Garner, Richter, Klein & Hilbert, L.L.C.* ("*Sher Garner*"), where another district court in the Eastern District of Louisiana found that "Sher Garner's allegation that McGlinchey engaged in 'abusive and unfair tactics . . . purposefully done to the unfair detriment of [Sher Garner], suggest[ed] that McGlinchey was not improperly joined."[41] Therefore, Plaintiffs argue that Louisiana Defendants are not improperly joined.[42]

Second, Plaintiffs assert that they have stated a valid fraud claim against Louisiana Defendants.[43] Plaintiffs note that they have alleged:

> the information withheld (that they would not be allowed to work on Avondale Litigation after their consolidation with Irwin Fritchie), the time it was withheld (at least from December 2017, when they were first instructed to merge, until June 2018), the nature of the relationship giving rise to the duty to speak (the co-counsel relationship between Rosamond and Plaintiffs), and the correlative duty created by Rosamond when he chose to misrepresent to Plaintiffs on how to remain part of the Avondale defense team.[44]

Plaintiffs contend that this case is similar to *Foley & Lardner, L.L.P. v. Aldar Investments, Inc.*, where a district judge in the Middle District of Louisiana found that the defendant's attorney and law firm participated in the fraud perpetrated against the plaintiff's attorney by reneging on a prior agreement, misrepresenting some facts, and withholding other facts.[45] In this case, Plaintiffs assert

---

[40] *Id.* at 20.

[41] *Id.* at 21 (citing No. 10-645, 2010 WL 3303830, at *2 (E.D. La. Aug. 18, 2010)).

[42] *Id.*

[43] *Id.*

[44] *Id.* at 23.

[45] *Id.* (citing 491 F. Supp. 2d 595, 605 (M.D. La. 2007)).

that Louisiana Defendants can be held liable for their misrepresentations and omissions.[46]

Third, Plaintiffs argue that they have stated a valid claim for tortious interference with business relations.[47] Plaintiffs assert that they have alleged that Louisiana Defendants concealed "Resolute and Lamorak's intent not to allow Plaintiffs to continue working on Avondale litigation while encouraging Plaintiffs to dismantle their law firm and to integrate their staff and intellectual property into a competitor firm for the purpose of continuing to work on the Avondale litigation."[48] Therefore, Plaintiffs assert that Louisiana Defendants impermissibly interfered with the contract between Plaintiffs and Irwin Fritchie in violation of Louisiana Civil Code article 2315.[49]

Finally, even if Plaintiffs have failed to sufficiently articulate their claims against Louisiana Defendants, Plaintiffs assert that any deficiencies could be cured by an amendment to the Petition.[50] Therefore, Plaintiffs assert that this case should be remanded to state court and they should be awarded attorney's fees and costs for the improper removal of this action.[51]

**B.** *Removing Defendants' Arguments in Opposition to the Motion to Remand*

In opposition, Removing Defendants argue that removal was proper because Plaintiffs have improperly joined Louisiana Defendants.[52] Specifically, Removing Defendants assert that the original Petition does not state proper detrimental reliance or intentional interference with contract claims against Rosamond or Taylor Wellons.[53] Additionally, Removing Defendants argue that the

---

[46] *Id.*

[47] *Id.*

[48] *Id.* at 24.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] Rec. Doc. 44 at 1.

[53] *Id.*

Court should not consider the fraud and conspiracy claims raised in the Amended Petition for purposes of deciding the instant motion to remand "[b]ecause propriety of removal is based on the complaint or petition on file at the time of removal and post-removal filings may not be considered when or to the extent that they present new causes of action or theories."[54] Therefore, Removing Defendants contend that the motion to remand must be denied.[55]

First, Removing Defendants assert that Louisiana Defendants are shielded from any liability for actions taken by Rosamond as an attorney for Lamorak.[56] Removing Defendants contend that under Louisiana law Louisiana Defendants did not owe any legal duty to Plaintiffs for actions taken as attorneys in representation of their client.[57] For this reason, Removing Defendants assert that federal district courts in Louisiana "consistently deny motions to remand that are premised upon an in-state defendant attorney owing a duty to a non-client third party."[58] Removing Defendants contend that Plaintiffs' reliance on *Sher Garner*, is unpersuasive because that case was based on a narrow exception that an attorney may be held liable for intentional torts committed with the intent to harm.[59] To the extent Plaintiffs argue that their claims against Rosamond are in his individual capacity, rather than as part of his representation of Lamorak, Removing Defendants assert that this claim is contradicted by the allegation in the Petition that Rosamond "during all times at issue in the subject claims, acted as Resolute/OneBeacon's attorney

---

[54] *Id.* at 2, n.2 (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995); *Klatz v. La. Citizens Prop. Ins. Corp.*, No. 17-3776, 2017 WL 5899248, at *5 (E.D. La. Nov. 30, 2017) (Brown, J.)).

[55] *Id.* at 2.

[56] *Id.* at 10.

[57] *Id.* (citing *Scheffler v. Adams & Reese LLP*, 06-1774 (La. 2/22/07); 950 So. 2d 641, 652–53).

[58] *Id.* at 10–11 (citing *Morshaeuser v. Citimortgage, Inc.*, No. 12-2210, 2012 WL 5289383, at *9 (E.D. La. Oct. 24, 2012); *Tarver v. Safety Nat'l Cas. Corp.*, No. 08-0222, 2008 WL 11388571, at *7-8 (W.D. La. Aug. 7, 2008)).

[59] *Id.* at 11.

in connection with their obligations and agreements to defend Avondale asbestos litigation."[60] Furthermore, Removing Defendants note that Plaintiffs do not explain why it would be reasonable for them to rely on any representation Rosamond made in his individual capacity about the intentions of Lamorak, Resolute, or Avondale.[61] Therefore, Removing Defendants argue that Louisiana Defendants are shielded from liability for all of Plaintiffs' claims because all of the claims arise out of Louisiana Defendants' representation of Lamorak.[62]

Second, Removing Defendants assert that federal jurisdiction is determined based on the allegations contained in the Petition at the time of removal, and in the original Petition, Plaintiffs did not state a claim for detrimental reliance or intentional interference with a contract.[63] Removing Defendants contend that Plaintiffs' motion to remand does not mention the claim for intentional interference with a contract, thereby conceding that they cannot state such a claim.[64] Furthermore, Removing Defendants contend that intentional interference with contract claims are limited to actions where a corporate officer interferes with a contractual relationship between his employer and a third person.[65]

Additionally, Removing Defendants argue that Plaintiffs have failed to state a claim for detrimental reliance because they do not allege any specific promise by Rosamond upon which Plaintiffs relied.[66] Removing Defendants note that the only statement Plaintiffs attribute to Rosamond is that he and Brian Bossier, a non-party, "stated to Lee [at a December 2017 meeting]

---

[60] *Id.* at 12 (citing Rec. Doc. 1-3 at 3).

[61] *Id.*

[62] *Id.* at 10–11.

[63] *Id.* at 11–13.

[64] *Id.* at 14.

[65] *Id.* (citing *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989); *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 395 (5th Cir. 2012)).

[66] *Id.* at 16.

that in order for [the plaintiffs] to continue participating in the Avondale litigation defense" the plaintiffs would have to join Irwin Fritchie as counsel.[67] Removing Defendants argue that this is a statement, not an actionable promise, and in no way guaranteed Plaintiffs indefinite continued representation of Avondale.[68] Furthermore, Removing Defendants assert that Rosamond cannot be held liable for relaying a message on behalf of Lamorak.[69] Finally, Removing Defendants contend that Plaintiffs' alleged reliance on the purported promise was unreasonable as a matter of law because a client has the "absolute right to discharge his or her lawyer at any time."[70] Therefore, Removing Defendants argue that Plaintiffs have failed to state a cause of action against Rosamond or Taylor Wellons for detrimental reliance.[71]

Finally, even if Plaintiffs could expand their purported causes of action beyond the pleadings that were filed at the time of removal, Removing Defendants argue that Plaintiffs have not state a claim for fraud, business interference, or conspiracy.[72] As an initial matter, Removing Defendants contend that conspiracy is not a stand-alone tort under Louisiana law.[73] Additionally, Removing Defendants assert that Plaintiffs have not stated a claim for fraud against Louisiana Defendants because they have not alleged and cannot prove facts that would establish two essential elements of that claim: a duty to speak and a pecuniary interest in the information allegedly withheld.[74] Removing Defendants argue that "the Louisiana Supreme Court [has] established as a

---

[67] *Id.*

[68] *Id.*

[69] *Id.* at 17–18 (citing *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016)).

[70] *Id.* at 19 (quoting *Clegg v. USAgencies Ins. Co.*, 07-1781 (La. App. 1 Cir. 3/26/08); 985 So. 2d 781, 784).

[71] *Id.* at 20.

[72] *Id.*

[73] *Id.* (citing *Butz v. Lynch*, 97-2166 (La. App. 1 Cir. 4/8/98); 710 So. 2d 1171, 1174).

[74] *Id.*

bright-line rule that attorneys do not owe fiduciary duties to co-counsel in the course of the representation of their client."[75] Removing Defendants also note that Plaintiffs do not allege that Rosamond personally gained anything by allegedly withholding information from them.[76] Moreover, Removing Defendants assert that Plaintiffs have not stated a claim for tortious interference with business relations because they do not allege that Rosamond or Taylor Wellons were motivated by "spite or ill will" to show actual malice.[77] Accordingly, Defendants assert that Louisiana Defendants should not be considered for the purposes of determining diversity, and the Court should deny the motion to remand.[78]

### C. *Louisiana Defendants' Arguments in Opposition to the Motion*

On September 9, 2019, Louisiana Defendants filed an opposition to the motion, which adopts the arguments set forth in Removing Defendants' opposition.[79]

### D. *Plaintiffs' Arguments in Further Support of the Motion*

In the reply brief, Plaintiffs assert that the original Petition identified several causes of action against Louisiana Defendants including: (1) detrimental reliance; (2) fraud; (3) negligent misrepresentation; (4) conspiracy to defraud; (5) unjust enrichment; (6) intentional interference with contract; and (7) tortious interference with a business relationship.[80] Plaintiffs argue that the elements of each of those claims were alleged in the original Petition.[81] Plaintiffs assert that they were promised that they would continue to be part of the Avondale defense team if they integrated

---

[75] *Id.* at 22 (citing *Schaffer*, 950 So. 2d at 652–53).

[76] *Id.* at 23.

[77] *Id.* at 24.

[78] *Id.* at 25.

[79] Rec. Doc. 54.

[80] Rec. Doc. 58 at 2–3.

[81] *Id.* at 3.

with Irwin Fritchie, and Plaintiffs argue they were threatened that they would not be permitted to work on the Avondale defense team if they did not integrate with Irwin Fritchie.[82]

Plaintiffs assert that the Amended Petition only supplements their factual allegations.[83] Specifically, Plaintiffs note that the Amended Petition alleges that Plaintiffs and Louisiana Defendants worked closely together and truthfulness and trust between them was an essential component of their long working relationship such that Plaintiffs were reasonable in relying upon Rosamond's assurances.[84] Additionally, Plaintiffs allege that Removing Defendants began to seek to have Plaintiffs removed from the Avondale defense as early as 2015, without Plaintiffs' knowledge, and Plaintiffs materially changed their position due to the fraudulent promises conveyed by Louisiana Defendants.[85] Plaintiffs contend that all of the defendants made repeated misrepresentations to Plaintiffs "in writing, verbally and by silence, all the while watching Plaintiffs' give up their livelihoods and knowing that [Removing] Defendants' ultimate goal was to eliminate Plaintiffs from the Avondale work."[86] Plaintiffs note that they never alleged that they were told they would be able to work on the Avondale defense team "indefinitely."[87] Accordingly, Plaintiffs argue that they have adequately alleged several causes of action against Louisiana Defendants.[88]

Next, Plaintiffs assert that Louisiana Defendants are not shielded from liability for acting

---

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.* at 4.

[87] *Id.*

[88] *Id.*

as attorneys for Lamorak because lawyers may not perpetrate a fraud.[89] Plaintiffs contend that Removing Defendants "cite no authority for the proposition that an attorney is immune under these circumstances for knowingly assisting a client by actively participating in a client's fraudulent misrepresentations."[90] Plaintiffs argue that they "are not seeking to recover from Rosamond for his client's deeds but are asserting their rights against [] Rosamond who personally, and with knowledge, was the primary actor knowingly conveying fraudulent promises which were the cause of Plaintiffs' detrimental reliance."[91] Therefore, Plaintiffs assert that Louisiana Defendants are liable for their fraud even if they "were only voicing their client's wishes when committing fraud against Plaintiffs."[92]

Plaintiffs also contend that Lamorak and Resolute were not adversaries of Avondale, but to the degree that there are factual disputes about this issue, Plaintiffs argue that the Court must assume as true the facts pled that there was no adversarial relationship.[93] Plaintiffs assert that the issue of whether Lamorak or Avondale had the right to control the Avondale Asbestos Litigation and fire Plaintiffs is also a question of fact.[94] Accepting the allegations made in the Petition as true, Plaintiffs contend that Lamorak tortuously interfered with Plaintiffs' representation of Avondale.[95] Plaintiffs argue that "[a]t this juncture, it is impossible to know who exercised control over the Louisiana Defendants, who exercised control over decisions about the Avondale litigation, or who

---

[89] *Id.* at 4–5 (citing *United States v. Cavin*, 39 F.3d 1299, 1308–09 (5th Cir. 1994)).

[90] *Id.* at 5.

[91] *Id.*

[92] *Id.*

[93] *Id.* at 5–6.

[94] *Id.* at 6.

[95] *Id.* at 6–7.

chose to blackball Plaintiffs from performing Avondale defense litigation."[96]According to Plaintiffs, the resolution of these questions may be central to a determination on the liability of Louisiana Defendants.[97]

Finally, Plaintiffs argue that Removing Defendants grossly mischaracterize Plaintiffs' claims.[98] Plaintiffs state that they are not asserting that they had a right to represent Avondale indefinitely, as Removing Defendants suggest.[99] Additionally, Plaintiffs contend that Removing Defendants incorrectly characterize Plaintiffs' claims as arising from their "failed merger with Irwin Fritchie.[100] Plaintiffs state that their claims do not rest on any purported discharge of Plaintiffs as attorneys hired by Removing Defendants but rest on the intentional and fraudulent misrepresentations that employment or merger with Irwin Fritchie would preserve Plaintiffs' work with Avondale.[101] Plaintiffs argue that the pleadings must be interpreted to do substantial justice, and "[s]ubstantial justice herein would be to remand this matter to state court for discovery and for trial against all the Defendants."[102]

### III. Legal Standard

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[103] A federal court has subject matter jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between

---

[96] *Id.* at 7.

[97] *Id.*

[98] *Id.* at 8.

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *Id.* at 9.

[103] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

citizens of different states."[104] The removing party bears the burden of demonstrating that federal jurisdiction exists.[105] Subject matter jurisdiction is fixed at the time of removal, and it cannot be eliminated by events that occur after removal.[106]

In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition, that federal courts are courts of limited jurisdiction and that "removal statute[s] should be strictly construed in favor of remand."[107] Remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[108] Moreover, 28 U.S.C. § 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

In this case, complete diversity of citizenship is lacking on the face of the state court petition because Plaintiffs and Louisiana Defendants are citizens of Louisiana. Despite the presence of a non-diverse defendant in this lawsuit, Removing Defendants argue that this Court has diversity jurisdiction over this matter because Plaintiffs have improperly joined the non-diverse defendants in order to defeat diversity jurisdiction.

"The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."[109] The party

---

[104] 28 U.S.C. § 1332(a)(1).

[105] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[106] *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").

[107] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[108] *Acuna v. Brown & Root Inc*., 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp*., 855 F.2d 1160, 1164 (5th Cir. 1988)).

[109] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (internal citations omitted).

asserting improper joinder "bears a heavy burden of proving that joinder of the in-state party was improper."[110] The Fifth Circuit has long recognized two methods of fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, and (2) the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.[111] In this case, Removing Defendants allege that Louisiana Defendants are improperly joined because Plaintiffs have not pled a viable cause of action against Louisiana Defendants.

In *Smallwood v. Illinois Central Railroad Co.*, the Fifth Circuit stated that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[112] District courts may assess whether a plaintiff has "a reasonable basis of recovery under state law" in either of two ways.[113] First, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[114] Second, in rare cases, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[115]

---

[110] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[111] *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (internal citations omitted). The Fifth Circuit also refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases. *See, e.g., Crockett*, 436 F.3d 532. In this Order, the Court will use both terms.

[112] *Smallwood*, 385 F.3d at 573.

[113] *Id.*

[114] *Id.*

[115] *Id.*

If a court decides to "pierce the pleadings" when assessing a claim of improper joinder, it may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor.[116] However, a court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[117] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the possibility" that the non-diverse party may be held liable.[118] The Fifth Circuit has stated that district courts should consider summary judgment-type evidence at this stage of the proceedings only in those cases, "hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder."[119] Even in such cases, the district court's decision to pierce the pleadings and conduct a summary inquiry is within its discretion.[120]

"To determine whether jurisdiction is present for removal," the Fifth Circuit instructs that courts must "consider the claims in the state court petition as they existed at the time of

---

[116] *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003).

[117] *Guillory v. PPG Indus., Inc*., 434 F.3d 303, 308–09 (5th Cir. 2005).

[118] *Travis*, 326 F.3d at 650.

[119] *Smallwood*, 385 F.3d at 573.

[120] *Id.*

removal."[121] "[A] a complaint amended post-removal cannot divest a federal court of jurisdiction."[122] As the Fifth Circuit has explained:

> The rationale for determining removal jurisdiction on the basis of claims in the state court complaint as it exists at the time of removal is obvious. Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved. Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.[123]

"[P]ost-removal filings may be considered only to the extent they amplify or clarify facts alleged in the state-court complaint, with new claims or theories of recovery disregarded."[124] If the Court "determines that a nondiverse party has been improperly joined to defeat diversity, that party must be dismissed without prejudice."[125]

## IV. Analysis

In the Notice of Removal, Removing Defendants assert that Louisiana Defendants were improperly joined as defendants in this matter.[126] In the Motion to Remand, Plaintiffs assert that the Court should remand this case to state court because Removing Defendants cannot prove that Louisiana Defendants were improperly joined.[127] Plaintiffs contend that they have asserted several

---

[121] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)).

[122] *Cavallini*, 44 F.3d at 264 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)).

[123] *Id.*

[124] *Akerblom v. Ezra Holdings Ltd.*, 509 F. App'x 340, 344 (5th Cir. 2013), *abrogated on other grounds by Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016).

[125] *Int'l Energy Ventures Mgmt.*, 818 F.3d at 209.

[126] Rec. Doc. 1 at 4.

[127] Rec. Doc. 20 at 2.

valid claims against Louisiana Defendants including detrimental reliance, fraud, and tortious interference with business relations.[128] In the original Petition, Plaintiffs specifically identified the following causes of action: (1) open account claims against Resolute, Lamorak, and OneBeacon; (2) detrimental reliance claims against all of the defendants; and (3) intentional interference with contract claims against all of the defendants.[129] As stated above, "post-removal filings may be considered only to the extent they amplify or clarify facts alleged in the state-court complaint, with new claims or theories of recovery disregarded."[130] Plaintiffs argue that the Court can consider the fraud and tortious interference with business relations claims in deciding the motion to remand because the elements of these claims were alleged in the original Petition.[131] However, because the original Petition does not explicitly identify these causes of action, the Court will limit its analysis to consider only the detrimental reliance claim raised in the original Petition.

Plaintiffs claim that they have alleged a valid cause of action against Louisiana Defendants for detrimental reliance.[132] Plaintiffs argue that there is nothing to suggest that Rosamond's actions were taken in his role as an attorney for Resolute or Lamorak.[133] Because Plaintiffs and Rosamond worked together as co-counsel representing the interests of Lamorak and Resolute, Plaintiffs assert that Rosamond, at a minimum, owed them a duty of truthfulness and fair dealing.[134] In opposition, Removing Defendants assert that Louisiana Defendants are shielded from any liability for actions

---

[128] *Id.*

[129] Rec. Doc. 1-3.

[130] *Akerblom*, 509 F. App'x at 344.

[131] Rec. Doc. 58 at 3.

[132] Rec. Doc. 20-1 at 18.

[133] *Id.*

[134] *Id.* at 20.

taken by Rosamond as an attorney for Lamorak.[135] Removing Defendants contend that under Louisiana law Louisiana Defendants did not owe any legal duty to Plaintiffs for actions taken as attorneys in representation of their client.[136] Additionally, Removing Defendants argue that Plaintiffs have failed to state a claim for detrimental reliance because: (1) Plaintiffs do not allege any specific promise by Rosamond upon which Plaintiffs relied; (2) Rosamond cannot be held liable for relaying a message on behalf of Lamorak; and (3) Plaintiffs' alleged reliance on the purported promise was unreasonable as a matter of law because a client has the right to discharge an attorney at any time.[137] In reply, Plaintiffs argue that they "are not seeking to recover from Rosamond for his client's deeds but are asserting their rights against [] Rosamond who personally, and with knowledge, was the primary actor knowingly conveying fraudulent promises which were the cause of Plaintiffs' detrimental reliance."[138]

Under Louisiana law, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."[139] To establish a claim of detrimental reliance a plaintiff must demonstrate: "(1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance."[140] "It

---

[135] Rec. Doc. 44 at 10.

[136] Id.

[137] Id. at 16–19.

[138] Rec. Doc. 58 at 5.

[139] La. Civ. Code art. 1967.

[140] In re Ark-La-Tex Timber Co., Inc., 482 F.3d 319, 334 (5th Cir. 2007) (citing Suire v. Lafayette City-Par. Consol. Gov't, 04-1459 (La. 4/12/05); 907 So. 2d 37, 59).

is difficult to recover under the theory of detrimental reliance, because such a claim is not favored in Louisiana" and such claims must be "examined carefully and strictly."[141]

The Fifth Circuit has recognized that "[t]he doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence."[142] However, "[t]ypically, successful detrimental reliance claims are based upon promises made to the claimant by the other party."[143] "[T]he basis of detrimental reliance is 'the idea that a person should not harm another person by making promises that he will not keep.' Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment.'"[144]

The Louisiana Supreme Court has made clear that "Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf."[145] "Louisiana law recognizes that an attorney's paramount duty is, and must be, to his client."[146] "A non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation."[147] "As such, not even the Rules of Professional Conduct create actionable duties for negligent injury of a

---

[141] *Id.* (internal citations omitted).

[142] *Id.* (citing *Suire*, 907 So. 2d at 58–59).

[143] *Id.* (internal citations omitted)/

[144] *Suire*, 907 So. 2d at 59 (quoting *The 1984 Revision of the Louisiana Civil Code's Articles on Obligations: Detrimental Reliance*, 45 LA. L.REV. 747, 765–66 (1985)).

[145] *Bank of New York Mellon v. Smith*, 15-0530 (La. 10/14/15); 180 So. 3d 1238, 1245 (citing *Penalber v. Blount*, 550 So. 2d 577, 581 (La. 1989)).

[146] *Scheffler v. Adams and Reese, LLP*, 06-1774 (La. 2/22/07); 950 So. 2d 641, 652.

[147] *Bank of New York Mellon*, 180 So. 3d at 1245

client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary."[148] "The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client."[149] However, an attorney may be held personally accountable for his intentional tortious conduct because "[i]ntentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity."[150] To establish an intentional tort, "it is essential for the petition to allege facts showing specific malice or an intent to harm on the part of the attorney. . . ."[151]

In *Scheffler v. Adams and Reese, LLP*, the Louisiana Supreme Court considered "whether one co-counsel may sue another for breach of fiduciary duty on the theory that the latter's misconduct in handling the representation reduced or eliminated the prospective fees the former expected to realize from the joint representation."[152] The Louisiana Supreme Court held "that, as a matter of public policy, based on our authority to regulate the practice of law pursuant to the constitution, no cause of action will exist between co-counsel based on the theory that co-counsel have a fiduciary duty to protect one another's prospective interests in a fee."[153] The court reasoned that allowing such an action would "subject an attorney to potential conflicts of interest in trying to serve two masters and potentially compromise the attorney's paramount duty to serve the best interests of the client."[154]

---

[148] *Penalber*, 550 So. 2d at 581.

[149] *Montalvo v. Sondes*, 637 So. 2d 127, 130 (La. 1994) (citing *Penalber*, 550 So. 2d at 577).

[150] *Id.* (quoting *Penalber*, 550 So. 2d at 582).

[151] *Id.*

[152] *Scheffler*, 950 So. 2d at 650.

[153] *Id.* at 653.

[154] *Id.*

In *East Baton Rouge Parish Sewerage Commission v. Banks*, an attorney was sued by the parish for knowingly and intentionally withdrawing funds from the registry of the court and giving them to his client without authority to do so.[155] The Louisiana First Circuit Court of Appeal found that the attorney could be held liable to the parish because he "knew such conduct would cause direct harm to the Parish, and even if [the attorney] reasoned that his conduct was in some way justified as beneficial to his clients, it cannot be classified as anything other than intentional."[156]

In *Arledge v. Hendricks*, the plaintiff therein sued his ex-wife's lawyer on the grounds that the lawyer had defamed him by falsely claiming in the custody suit that the plaintiff had committed aggravated rape, i.e., criminal conduct.[157] The Louisiana Second Circuit Court of Appeal reversed the trial court's grant of an exception of no cause of action, finding that the plaintiff's assertions that the lawyer "knew" that the allegations were untrue was sufficient to constitute malice.[158] The court relied on Louisiana Code of Civil Procedure article 856, which provides in pertinent part: "Malice, intent, knowledge, and other condition of mind of a person may be alleged generally."[159] Therefore, the court held that "[a]lthough [the plaintiff's] allegation of knowledge of falsity may be considered vague, it is broad enough to require the admission of evidence."[160] Louisiana Code of Civil Procedure article 856 mirrors the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.[161]

---

[155] 09-0107 (La. App. 1 Cir. 4/1/10); 2010 WL 1253631 at *6, *writ denied*, 1011025 (La. 9/3/10); 44 So. 3d 690 (unpublished).

[156] *Id.*

[157] 30,588 (La. App. 2 Cir. 6/26/98); 715 So. 2d 135, 140, *writ denied*, 98–2015 (La. 11/20/98), 728 So. 2d 1287.

[158] *Id.* (internal citations omitted).

[159] *Id.*

[160] *Id. Cf. Mahfouz v. Davenport*, 14-358 (La. App. 3 Cir. 10/1/14); 149 So. 3d 845, 853 (finding allegation that the attorney made assertions to the trial court which, had the attorney apprised himself of the record and/or the applicable law, he would have realized were incorrect, insufficient to show malice or an intent to harm).

[161] Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances

In the Petition, Plaintiffs allege that in December 2017, Rosamond requested a meeting with Lee and counsel for Avondale, Brian Bossier.[162] According to the Amended Petition, at the meeting, "Lee was advised that a decision had been negotiated among the Avondale Group members that, in order [for Plaintiffs] to continue in their ongoing defense of the Avondale interests, the equity partners and other key [Lee, Futrell & Perles] attorneys and staff involved in defending the Avondale cases must join [Irwin Fritchie]."[163] Plaintiffs allege that during the meeting "it was made clear that Gary A. Lee, Richard M. Perles, and John M. Futrell were critical to the consolidation of the Avondale defense and directed that they be part of the consolidation. It was further directed that Messrs. Lee, Perles and Futrell would move to [Irwin Fritchie] and be an integral part of the asbestos defense for the Avondale group and would continue assisting and training [Irwin Fritchie] attorneys in defending the Avondale cases."[164]

Plaintiffs allege that for most of 2018 they diligently and routinely met with Irwin Fritchie to familiarize Irwin Fritchie with the complex litigation.[165] From January 2018 through June 2018, Plaintiffs state that they transferred many key staff members and lawyers to Irwin Fritchie.[166] Additionally, Plaintiffs negotiated an early termination of their leased office space, ultimately paying $300,000 in a negotiated buy out of the lease, so that Plaintiffs could join Irwin Fritchie.[167]

---

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[162] Rec. Doc. 1-3 at 4.

[163] *Id.*

[164] *Id.* at 4–5.

[165] *Id.*

[166] *Id.* at 5.

[167] *Id.*

Furthermore, Plaintiffs allege that they sent Irwin Fritchie "all Avondale-related data and intellectual property."[168]

Plaintiffs allege that on June 21, 2018, Rosamond informed them that "Resolute had decided that neither Lee nor Futrell nor Perles would be allowed to work on any Avondale defense file[s] going forward."[169] Plaintiffs state that "[b]y the time Resolute announced their true intent, [Plaintiffs] had dismantled" their firm.[170] Plaintiffs allege that Rosamond was aware of Resolute's true intentions and "knowingly facilitated the misrepresentation and interference with contract."[171] Plaintiffs contend that they relied on the false representations of Lamorak and Rosamond, to their detriment.[172] Plaintiffs further allege that the defendants "intentionally and fraudulently deceiv[ed] [Plaintiffs] and destroy[ed] [Plaintiffs'] law firm and law business."[173] Additionally, Plaintiffs assert that Louisiana Defendants "cannot hide behind their representation of Resolute as a defense to their bad actions, because no client can force a law firm to do wrong."[174] Plaintiffs state that the "purported consolidation was orchestrated and demanded by the [Removing] Defendants through Samuel Rosamond, who then took that information and used it to their own advantage."[175] Plaintiffs allege that at all times the defendants knew that Plaintiffs were actively dismantling their law firm in reliance on Defendants' promises and directives, but none of the defendants warned

---

[168] *Id.* at 6.

[169] *Id.*

[170] *Id.* at 7.

[171] *Id.*

[172] *Id.*

[173] *Id.*

[174] *Id.*

[175] *Id.* at 8.

Plaintiffs that they "would never be allowed to perform any work for Avondale while at [Irwin Fritchie]."[176]

Rule 4.1 of the Louisiana State Bar Association's Rules of Professional Conduct provides:

In the course of representing a client a lawyer shall not knowingly:

(a) Make a false statement of material fact or law to a third person; or

b) Fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

Rule 1.6(b)(2) provides that "[a] lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services."

As noted above, the Rules of Professional Conduct do not create "actionable duties for negligent injury of a client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary."[177] However, in this case Plaintiffs allege that Rosamond intentionally made false statements of material fact regarding Plaintiffs continued representation of Avondale and that Rosamond intentionally failed to disclose fraudulent conduct by Removing Defendants. Considering the foregoing and viewing all factual allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs' allegations that Rosamond was aware of Removing Defendants' true intentions and "knowingly facilitated the misrepresentation and interference with contract" suggests that Rosamond and Taylor Wellons were not improperly

---

[176] *Id.*

[177] *Penalber*, 550 So. 2d at 581.

joined. The allegations can be read as claiming intentional tortious conduct by Louisiana Defendants demonstrating an intent to harm.

Finally, Removing Defendants argue that Plaintiffs have failed to state a claim for detrimental reliance because Plaintiffs do not allege any specific promise by Rosamond upon which Plaintiffs relied, and Plaintiffs' alleged reliance on the purported promise was unreasonable as a matter of law because a client has the right to discharge an attorney at any time. Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged that Rosamond represented that Plaintiffs would be allowed to continue working on the Avondale Asbestos Litigation if they merged with Irwin Fritchie, and the representation was made in such a manner that Rosamond should have expected Plaintiffs to rely upon it. Additionally, Plaintiffs do not allege that they had the right to work on the Avondale Asbestos Litigation indefinitely or that Removing Defendants never could have removed them from the case. Instead, Plaintiffs allege that defendants never intended that Plaintiffs would continue working on the litigation and "intentionally and fraudulently deceiv[ed] [Plaintiffs] and destroy[ed] [Plaintiffs'] law firm and law business."[178] Accordingly, Plaintiffs have pled facts indicating that they were justified in relying on the promise.

As the parties who removed the case, Removing Defendants bear the heavy burden of proving that joinder of the Louisiana Defendants was improper.[179] On a motion to remand based on improper joinder, the Court cannot assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the

---

[178] Rec. Doc. 1-3 at 7.

[179] *Smallwood*, 385 F.3d at 574.

plaintiff might do so."[180] Furthermore, all "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[181] Considering that it is not clear that Plaintiffs will be unable to prevail on the claims against the Louisiana Defendants, the Court finds that this matter must be remanded to state court.

Finally, Plaintiffs assert that attorneys' fees should be assessed against Removing Defendants. When a district court remands a case, the court has the discretion to award attorneys' fees incurred as a result of removal to the non-removing party, but the court should decline to do so if the removing party had an "objectively reasonable basis for removal."[182] Here, although Removing Defendants have not prevailed on this motion, their arguments are not completely meritless. Therefore, Removing Defendants had an "objectively reasonable basis" for seeking removal. Accordingly, the Court denies Plaintiffs' request for attorneys' fees.

## V. Conclusion

Based on the foregoing, is not clear that Plaintiffs will be unable to prevail on their claims against Louisiana Defendants. Therefore, the Court lacks subject matter jurisdiction over this case and must remand it to the state court from which it was removed.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand[183] is **GRANTED IN PART** to the extent it seeks remand and this matter is remanded to the Civil District Court for the Parish of Orleans, State of Louisiana.

---

[180] *Guillory*, 434 F.3d at 308–09.

[181] *Acuna*, 200 F.3d at 339.

[182] *Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.,* 592 F. App'x 268, 270 (5th Cir. 2014).

[183] Rec. Doc. 20.

**IT IS FURTHER ORDERED** that the Motion to Remand[184] is **DENIED IN PART** to the extent that Plaintiffs' Request for Attorneys' Fees is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this _27th_ day of September, 2019.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[184] *Id.*